IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| GRISELDA MEDRANO, *et al.* ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | Civil Action No. TDC-15-1292 |
| ) | |
| ELMER'S PAINTING AND ) | |
| REMODELING, INC., *et al.* ) | |
| ) | |
| Defendants. ) | |
| ) | |

## REPORT AND RECOMMENDATION

This Report and Recommendation addresses Plaintiffs Griselda Medrano and Oscar Ivan Ravelo Ramirez's (hereinafter "Plaintiffs") Motion for Entry of Default Judgment, filed on November 29, 2016. ECF No. 7.[1] Defendants Elmer's Painting and Remodeling, Inc. and Elmer Melgar (hereinafter "Defendants") have not filed a response and the deadline for their response elapsed on December 13, 2016. *See* D. Md. Local R. 105.2.a (2016). Having reviewed the filings, no hearing is deemed necessary. *See* D. Md. Local R. 105.6. For the reasons stated herein, the undersigned recommends that, following the time to object to this Report and Recommendation, Plaintiffs' Motion for Entry of Default Judgment be GRANTED.

I.   FACTUAL AND PROCEDURAL HISTORY

Plaintiff Griselda Medrano ("Medrano") is an adult resident of the District of Columbia. Plaintiff Oscar Ivan Ravelo Ramirez ("Ramirez") is an adult resident of Maryland. ECF No. 1 at 2 (Compl. ¶¶ 3-4). Defendant Elmer's Painting and Remodeling, Inc. ("Elmer's Painting"), a

---
[1] On March 28, 2017, pursuant to 28 U.S.C. § 636 and Local Rules 301 and 302, Judge Chuang referred this case to the undersigned to review a default judgment and/or make recommendations concerning damages. ECF No. 14

Maryland corporation, has forfeited its status[2] and presently is not in good standing.[3] *See* Maryland Business Express, https://egov.maryland.gov/businessexpress (last visited Apr. 24, 2017). Elmer's Painting[4] is owned by Defendant Elmer Melgar ("Melgar").[5] ECF No. 1 at 2 (Compl. ¶ 6).

Defendant Melgar controlled the daily operations of Elmer's Painting. He supervised directly or indirectly the Plaintiffs. He had the power to hire, suspend, discipline, or fire the Plaintiffs. The Plaintiffs' work schedules were directly or indirectly set and controlled by Defendant Melgar, or he had the power to do so. The rate and method of the Plaintiffs' pay were directly or indirectly set and determined by Defendant Melgar, or he had the power to do so. *Id.* ¶¶ 11-15.

Defendants Melgar and Elmer's Painting are employers within the meaning of the Fair Labor Standards Act of 1938 ("FLSA"), 29 U.S.C. § 201, *et seq.*, the Maryland Wage & Hour Law ("MWHL"), Md. Code Ann., *Lab. & Empl.* § 3-401, *et seq.*, and the Maryland Wage Payment and Collection Law ("MWPCL"), Md. Code Ann., *Lab. & Empl.* § 3-501, *et seq.* At all times relevant, the Defendants had at least two or more employees engaged in commerce or

---

[2] "'**Forfeited**' means the right of the entity to conduct business in the State of Maryland has been relinquished. For domestic entities, this also means that the business has no existence under the laws of the State of Maryland. In most circumstances, a business is forfeited only after it has been 'not in good standing,' so the most common reasons for forefeiture are the same as the reasons businesses fall out of good standing."

"What Does It Mean That My Business Entity Is Not in Good Standing Or Forfeited?" (rev. Feb. 17, 2017), Maryland Department of Assessments & Taxation, http://dat.maryland.gov/businesses/Documents/entitystatus.pdf (last visited Apr. 24, 2017).

[3] "'**Not in Good Standing**' means the entity is not in compliance with one or more Maryland laws that apply to businesses and their responsibilities in this State." *Id.*

[4] Defendant Elmer Melgar established another company with a nearly identical name, "Elmers Painting & Remodeling Corporation" on September 4, 2014. The principal office is identical to "Elmer's Painting and Remodeling, Inc." Defendant Melgar is the resident agent for both companies. "Elmers Painting & Remodeling Corporation" is not in good standing because a penalty is due. *See* Maryland Business Express, https://egov.maryland.gov/businessexpress (last visited July 12, 2017).

[5] The undersigned takes judicial notice of the records of the Maryland Department of Assessments and Taxation pursuant to Federal Rule of Evidence 201(b)(2).

"handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person[.]" 29 U.S.C. § 203(s)(1)(A)(i). At all times relevant, the Defendants' annual gross volume of sales made or business done is not less than $500,000.00. ECF No. 1 at 2 (Compl. ¶ 6). Further, at all times relevant, the Defendants constituted an "enterprise" as defined by 29 U.S.C. § 203(r). *See* ECF No. 1 at 2-3 (Compl. ¶¶ 7-10).

Plaintiff Medrano was employed as a painter, remodeler, and cleaner by the Defendants from September 1, 2012 through January 20, 2015. Medrano was paid a regular hourly rate of $10.00 from September 1, 2012 through June 30, 2013. For the remainder of her employment, she was paid a regular hourly rate of $12.00. Medrano worked approximately sixty-six (66) hours per week. She was never paid the required overtime rate of one and a half times her regular hourly rate for those hours in excess of forty (40) per week. *See* ECF No. 1 at 4 (Compl. ¶¶ 18-21).

Plaintiff Ramirez was employed as a painter, remodeler, and cleaner by the Defendants from January 1, 2012 through January 20, 2015. He was paid a regular hourly rate of $15.63 throughout this employment period. Ramirez worked approximately sixty-six (66) hours per week. He was never paid the required overtime rate of one and a half times his regular hourly rate for those hours in excess of forty (40) per week. *See* ECF No. 1 at 4 (Compl. ¶¶ 18, 23-25).

On May 5, 2015, the Plaintiffs filed a Complaint against the Defendants alleging the Defendants willfully violated clear and well-established overtime provisions of the FLSA, MWHL, and MWPCL. ECF No. 1 at 2. The Plaintiffs seek compensatory and statutory damages for all unpaid overtime compensation as well as attorneys' fees and costs.

This Court's jurisdiction is based on federal question, 28 U.S.C. § 1331, as this civil action arises under "the Constitution, laws, or treaties of the United States." *See* 29 U.S.C. §

216(b) ("An action to recover the liability prescribed . . . may be maintained against any employer . . . in any Federal or State court of competent jurisdiction by any one or more employees for and in behalf of himself or themselves and other employees similarly situated."). This Court exercises supplemental jurisdiction over the state (Maryland) claims in accordance with 28 U.S.C. § 1367(a) ("in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.").

On May 6, 2015, a summons and a copy of the Complaint were issued by the Clerk of Court. ECF No. 2. The summonses were served on May 17, 2015 and returned to the Court as executed on May 19 and 29, 2015. ECF Nos. 3, 6. The Defendants' Answers were due June 8, 2015. *Id.* Neither Defendant filed an Answer by this deadline. Defendant Melgar however filed a June 1, 2015 notice disputing the case, which was received by the Court on June 15, 2015. ECF No. 7. Defendant Melgar noted he lacked sufficient funds to hire an attorney. *Id.*

On June 16, 2015, Judge Chuang ordered the Plaintiffs to "file and serve by mail on Defendants a Motion for Entry of Default by the Clerk and a Motion for Default Judgment, or show cause as to why such motions would be inappropriate, within 14 days of this Order." ECF No. 8. Eight days later, on June 24, 2015, the Plaintiffs moved for Clerk's entry of default for want of answer or other defense against the Defendants. ECF No. 9. Meanwhile, in light of Defendant Melgar's notice disputing the case, on July 1, 2015, Judge Chuang granted the Defendants an additional 21 days from the date of the Order to file an Answer or responsive pleading. ECF No. 10. No Answer or responsive pleading was filed. On July 29, 2015, the Clerk's Entry of Default was docketed against the Defendants. ECF No. 11.

Over fifteen (15) months elapsed without any apparent activity. On November 15, 2016, Judge Chuang issued an Order stating in pertinent part,

> A default was entered on July 29, 2015. ECF No. 10. To date, Plaintiffs have not moved for a judgment of default, nor have they made any additional filings since the June 24, 2015 Motion for Clerk's Entry of Default. This action has therefore been dormant for more than nine months. Accordingly, it is hereby ORDERED that within 14 days of the date of this Order, Plaintiffs must show cause as to why this case should not be dismissed without prejudice for want of prosecution. *See* D. Md. Local R. 103.3(b) (2016).

ECF No. 12.

Fourteen days later, on November 29, 2016, the Plaintiffs moved for default judgment. ECF No. 13. On March 28, 2017, Judge Chuang referred the case to the undersigned for a report and recommendation. ECF No. 14.[6]

## II. DISCUSSION

Federal Rule of Civil Procedure 55(b) governs the entry of default judgments. Pursuant to Rule 55(b), the clerk may enter a default judgment "[i]f the plaintiff's claim is for a sum certain or a sum that can be made certain by computation," and the defendant is in default for failing to appear and is "neither a minor nor an incompetent person." Fed. R. Civ. P. 55(b)(1). Additionally, when a defendant is an individual, the plaintiff must certify or declare to be true under penalty of perjury whether the defendant is in military service. 50 U.S.C. app. § 521(b)(1) ("In any action or proceeding covered by this section, the court, before entering judgment for the plaintiff, shall require the plaintiff to file with the court an affidavit—(A) stating whether or not the defendant is in military service and showing necessary facts to support the affidavit; or (B) if

---

[6] On April 27, 2017, the undersigned issued an Order directing the Plaintiffs to supplement the record as to Defendant Elmer Melgar's military status and further to address whether Defendant Elmer Melgar is a minor or incompetent person. *See* ECF No. 15. Two months later, on June 27, 2017, the undersigned issued a Supplemental Order directing the Plaintiffs to supplement the record per the Order of April 27, 2017 by July 13, 2017. *See* ECF No. 16. The Plaintiffs supplemented the record on July 7, 2017. *See* ECF No. 17.

5

the plaintiff is unable to determine whether or not the defendant is in military service, stating that the plaintiff is unable to determine whether or not the defendant is in military service.").[7]

The entry of default judgment is a matter within the discretion of the Court. *SEC v. Lawbaugh*, 359 F. Supp. 2d 418, 421 (D. Md. 2005) (citing *Dow v. Jones*, 232 F. Supp. 2d 491, 494 (D. Md. 2002)). As the Court noted in *Disney Enterprises, Inc. v. Delane*, 446 F. Supp. 2d 402 (D. Md. 2006), "[t]he United States Court of Appeals for the Fourth Circuit has a 'strong policy that cases be decided on the merits.'" *Id.* at 405 (quoting *United States v. Shaffer Equip. Co.*, 11 F.3d 450, 453 (4th Cir. 1993)). Nonetheless, "default judgment is available when the 'adversary process has been halted because of an essentially unresponsive party.'" *Id.* (quoting *Lawbaugh*, 359 F. Supp. 2d at 421).

In determining whether to award a default judgment, the Court takes as true the well-pleaded factual allegations in the complaint, other than those pertaining to damages. *Ryan v. Homecomings Fin. Network*, 253 F.3d 778, 780 (4th Cir. 2001) ("The defendant, by his default, admits the plaintiff's well-pleaded allegations of fact, is concluded on those facts by the judgment, and is barred from contesting on appeal the facts thus established." (citation and internal quotation marks omitted)); *see* Fed. R. Civ. P. 8(b)(6) ("An allegation—other than one relating to the amount of damages—is admitted if a responsive pleading is required and the allegation is not denied."). It remains, however, "for the court to determine whether these unchallenged factual allegations constitute a legitimate cause of action." *Agora Fin., LLC v. Samler*, 725 F. Supp. 2d 491, 494 (D. Md. 2010); 10A Charles Alan Wright et al., *Fed. Prac. and Proc. Civ.* § 2688 (3d ed. 1998) ("[L]iability is not deemed established simply because of the default . . . and the court, in its discretion, may require some proof of the facts that must be

---

[7] Plaintiffs' counsel affirmed under the penalties of perjury, as true to the best of her knowledge, information, and belief, "[r]esearch through the Defense Manpower Data Center and the Service Members Civil Relief Act verifies that [Elmer Melgar] is not in the military." ECF No. 17 at 1 ¶ 1.

6

established in order to determine liability."); *id.* (explaining that the court must "consider whether the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit mere conclusions of law").

If the Court finds that "liability is established, [it] must then determine the appropriate amount of damages." *Samler*, 725 F. Supp. 2d at 494 (citing *Ryan*, 253 F.3d at 780-81). This is so because "an allegation 'relating to the amount of damages' is not deemed admitted based on a defendant's failure to deny in a required responsive pleading." *Hartford Fin. Servs. Grp. Inc. v. Carl J. Meil, Jr., Inc.*, No. WDQ-10-2720, 2011 WL 1743177, at *7 (D. Md. May 5, 2011) (quoting Fed. R. Civ. P. 8(b)(6)); *Trs. of the Elec. Welfare Trust Fund v. MH Passa Elec. Contracting, LLC*, No. DKC-08-2805, 2009 WL 2982951, at *1 (D. Md. Sept. 14, 2009) ("Upon default, the well-pled allegations in a complaint as to liability are taken as true, although the allegations as to damages are not."); *Int'l Painters & Allied Trades Indus. Pension Fund v. Metro Glass & Mirror, Inc.*, No. ELH-11-2389, 2012 WL 893262, at *2 (D. Md. Mar. 14, 2012) ("The court does not accept factual allegations regarding damages as true, but rather must make an independent determination regarding such allegations.").

In sum, the Court must make two determinations. First, the Court must decide "whether the unchallenged facts in plaintiff['s] complaint constitute a legitimate cause of action[.]" *Samler*, 725 F. Supp. 2d at 494. Second, if the Court finds that liability is established, it must "make an independent determination regarding the appropriate amount of damages." *Id.*

### A. Liability

More than two years have elapsed since Defendants Melgar and Elmer's Painting were served with the Plaintiffs' Complaint, yet the Defendants have not pleaded or otherwise asserted a defense by filing an Answer. As a result, all of the factual allegations made in the Plaintiffs'

Complaint not pertaining to damages are deemed admitted. Fed. R. Civ. P. 8(b)(6); *Ryan*, 253 F.3d at 780.

The Plaintiffs moved for a default judgment on November 29, 2016 and the Defendants have not responded. It is within the Court's discretion to grant default judgment when a defendant is unresponsive. *See Park Corp. v. Lexington Ins. Co.*, 812 F.2d 894, 897 (4th Cir. 1987) (upholding a default judgment awarded where the defendant lost its summons and did not respond within the proper period); *Disney Enterprises*, 446 F. Supp. 2d at 405-06 (finding appropriate the entry of default judgment where the defendant had been properly served with the complaint and did not respond, despite repeated attempts to contact him). Accordingly, the Court should grant default judgment on the Complaint if the Plaintiffs establish the Defendants' liability.

That accepting as true the Plaintiffs' well-pleaded allegations, the undersigned finds the Plaintiffs have proven the following:

    a.    Elmer's Painting is a Maryland corporation;

    b.    Melgar is the owner of Elmer's Painting;

    c.    At all times relevant the Defendants had annual gross volume of sales made or business done in an amount exceeding $500,000.00;

    d.    At all times relevant the Defendants constituted an enterprise as defined by 29 U.S.C. § 203(r);

    e.    Each Defendant is an employer as defined by the FLSA, the MWHL, and the MWPCL;

    f.    Melgar controlled the daily operations of Elmer's Painting;

    g.    Melgar supervised the Plaintiffs directly or indirectly;

h. Melgar directly or indirectly set and controlled the Plaintiffs' work schedules;

i. Melgar directly or indirectly set and determined the rate and method of each Plaintiff's pay;

j. Melgar had the power to hire, discipline, suspend, or fire the Plaintiffs;

k. Because of his intrinsic involvement in the business, Melgar would be considered an employer for purposes of individual liability;

l. Plaintiffs were employed by the Defendants from 2012 through January 20, 2015;

m. Defendants paid Medrano $10.00 per hour from September 1, 2012 through June 30, 2013 regardless of the number of hours per week she worked. Medrano routinely worked sixty-six (66) hours per week. She was not compensated at the overtime rate (1.5 times the hourly rate or $15.00 per hour) for those hours she worked in excess of 40 hours a week. She worked an extra 26 hours per week and she should have been paid an extra $5.00 per hour;

n. Defendants paid Medrano $12.00 per hour from July 1, 2013 through January 20, 2015 regardless of the number of hours per week she worked. Medrano routinely worked sixty-six (66) hours per week. She was not compensated at the overtime rate (1.5 times the hourly rate or $18.00 per hour) for those hours she worked in excess of 40 hours a week. She worked an extra 26 hours per week and she should have been paid an extra $6.00 per hour;

o. Defendants owe Medrano $18,226.00[8] in unpaid overtime wages for the entire period of her employment (September 1, 2012 through January 20, 2015);

---

[8] In the Complaint Medrano claims she is owed $21,476.00 in unpaid overtime wages. *See* ECF No. 1 at 4 ¶ 22. The undersigned however calculates that Medrano is owed $5,590.00 in unpaid overtime wages for the period of September 1, 2012 through June 30, 2013 (the difference between the overtime rate she should have been paid and the regular rate she was paid for forty-three (43) weeks). The undersigned further calculates Medrano is owed $12,636.00 in unpaid overtime wages for the period of July 1, 2013 through January 20, 2015 (the difference between the overtime rate she should have been paid and the regular rate she was paid for eighty-one (81) weeks). These amounts total $18,226.00, which is $3,250.00 less than the amount Medrano alleges she is owed.

p. Defendants paid Ramirez $15.63 per hour regardless of the number of hours per week he worked throughout his employment period from January 1, 2012 through January 20, 2015. He routinely worked sixty-six (66) hours per week. He was not compensated at the overtime rate (1.5 times the hourly rate or $23.45 per hour) for those hours he worked in excess of 40 hours a week. He worked an extra 26 hours per week and he should have been paid an extra $7.82 per hour. Ramirez is owed $30,294.68[9] in unpaid overtime wages from January 1, 2012 through January 20, 2015;

q. Pursuant to 29 U.S.C. § 206(a)(1)(C), "[e]very employer shall pay to each of his employees who in any workweek is engaged in commerce or in the production of goods for

---

By the Order of July 14, 2017, the undersigned directed Plaintiffs' counsel "to provide a spreadsheet setting forth the computations of the overtime wages owed to Plaintiff Medrano and Plaintiff Ramirez as stated in the Complaint[.]" ECF No. 18 at 2 ¶ 3. In the July 28, 2017 supplemental submission, Plaintiffs' counsel states,

> Plaintiff Griselda Medrano's calculations are consistent regarding the allegations made in the Complaint; however, the claimed unpaid overtime wages were $21,476.00 in the Complaint while under the correct calculation the unpaid overtime wages are $18,226.00. *See* Exhibit 1.

ECF No. 19 at 1 ¶ 4. While Exhibit 1 (ECF No. 19-1) shows the computations totaling $18,226.00, these computations do **not** support Medrano's claim of $21,476.00 in unpaid overtime wages per the Complaint **nor** do these computations support Medrano's claim of $22,152.00 in unpaid overtime wages per her declaration in support of the Plaintiffs' Motion for Entry of Default Judgment. *See* ECF No. 13-1. Moreover Plaintiffs' counsel fails to acknowledge the change in dates when Medrano was paid $10.00 per hour versus when she was paid $12.00 per hour. In the Complaint Medrano alleges she worked for the Defendants from September 2012 until June 30, 2013 at an hourly rate of $10.00 and, thereafter, at an hourly rate of $12.00. However, in the declaration, Medrano asserts she worked for the Defendants from March 2012 through January 2015 and was paid an hourly rate of $10.00 in 2012 and paid an hourly rate of $12.00 thereafter.

[9] The undersigned calculates that Ramirez is owed $32,327.88, a difference of $2,033.20 more than Ramirez alleges in the Complaint. The undersigned's calculation is based on the difference between the overtime rate Ramirez should have been paid and the regular rate he was paid for one hundred and fifty-nine (159) weeks.

In compliance with the July 14, 2017 Order, Plaintiffs' counsel filed a supplemental submission and included the spreadsheet used to calculate damages owed to Ramirez. *See* ECF No. 19-2. The spreadsheet lists the week ending March 16, 2012 as the *first week* Plaintiff Ramirez worked for the Defendants, as opposed to the Complaint alleging Ramirez was employed beginning *January 1, 2012*. The gap between employment beginning January 1, 2012 (or the week ending January 6, 2012) and the week ending March 16, 2012 is *ten (10) weeks* or *$2,033.20*. Because Ramirez consistently and repeatedly declares the Defendants owe him $30,294.68 in overtime wages (the Complaint, his declaration in support of Plaintiffs' Motion for Entry of Default Judgment, and the spreadsheet filed as a supplemental submission), the undersigned recommends the Court accepts this figure as the amount of unpaid overtime wages owed.

commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce, wages" at a minimum of $7.25 an hour;

  r.  Defendants' failure to abide by 29 U.S.C. § 206 constitutes a willful violation;

  s.  In accordance with the MWHL, "each employer shall pay to each employee who is subject to both the federal Act and this subtitle, at least the greater of the minimum wage for that employee under the federal Act; or the State minimum wage rate set under subsection (c) of this section[.]" Md. Code Ann., *Lab. & Empl.*, § 3-413(b)(1);

  t.  Defendants' failure and refusal to comply with their obligations under the MWHL was willful and not in good faith;

  u.  "[No] employer shall employ any of his employees who in any workweek is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce, for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed." 29 U.S.C. § 207(a)(1);

  v.  Defendants' failure to abide by 29 U.S.C. § 207 constitutes a willful violation;

  w.  In accordance with the MWHL, "each employer shall pay an overtime wage of at least 1.5 times the usual hourly wage[.]" Md. Code Ann., *Lab. & Empl.*, § 3-415(a);

  x.  Defendants' failure and refusal to comply with their obligations under the MWHL was willful and not in good faith;

  y.  Pursuant to the MWPCL, "each employer shall pay an employee . . . all wages due for work that the employee performed before the termination of employment, on or before

the day on which the employee would have been paid the wages if the employment had not been terminated." *Id.,* § 3-505(a);

z. Defendants, as the employers, have the burden of demonstrating they withheld wages as a result of a bona fide dispute. *Peters v. Early Healthcare Giver, Inc.*, 439 Md. 646, 658-59, 97 A.3d 621, 628 (2014);

aa. Defendants' failure and refusal to comply with their obligations under the MWPCL was not due to a bona fide dispute, and thus was willful and not in good faith; and

bb. Plaintiffs worked in excess of forty hours per week, constituting overtime work. They were not properly compensated by the Defendants as required by the FLSA, the MWHL, and the MWPCL.

Accordingly, the Plaintiffs have established the Defendants' liability and therefore a default judgment as to the violations of the FLSA, the MWHL, and the MWPCL as outlined in the Plaintiffs' Complaint is proper.

**B. Damages**

In support of their claims for damages, each Plaintiff has submitted a declaration and their counsel have submitted a declaration with supporting documentation. In reviewing the motion for default judgment, the undersigned noted differences between the Complaint and the motion. For instance, in the Complaint, Medrano alleges she worked for the Defendants from September 1, 2012 through January 20, 2015. In her declaration however Medrano asserts that she worked for the Defendants from March 1, 2012 through January, 2015. *See* ECF No. 13-1 at 2 (Medrano Decl. ¶ 1). Second, in the Complaint, Medrano alleges she was paid at a regular hourly rate of $10.00 from September 1, 2012 through June 30, 2013. For the remainder of her

employment (July 1, 2013 to January 20, 2015), she was paid at a regular hourly rate of $12.00. However, in her declaration, she claims the Defendants paid her $10.00 per hour in 2012 and $12.00 per hour in 2013 and 2014. *See id.* (Medrano Decl. ¶ 2). Finally, in the Complaint, Medrano alleges the Defendants owe her $21,476.00 in unpaid overtime wages. In her declaration however Medrano contends the Defendants owe her $22,152.00 in unpaid overtime wages. For the reasons discussed *supra*, the amount the Defendants owe Medrano for unpaid overtime wages is $18,226.00.

With regard to Ramirez, the Complaint and his declaration are consistent regarding his hourly rate ($15.63), the average hours worked per week (66), and the amount the Defendants owe him in overtime wages ($30,294.68). The only difference is the period of employment. In the Complaint he alleges he worked for the Defendants from January 1, 2012 through January 20, 2015. In his declaration however Ramirez claims he worked from March 1, 2012 through January, 2015. *See* ECF No. 13-2 at 2 (Ramirez Dec. ¶ 1). For the reasons discussed *supra*, the amount the Defendants owe Ramirez for unpaid overtime wages is $30,294.68.

A default judgment is based on a court accepting as true the well-pleaded factual allegations in a complaint. Defendants Melgar and Elmer's Painting are aware of the Plaintiffs' factual allegations as outlined in the Complaint. In awarding damages, a court will be guided by those well-pleaded allegations. Any discrepancies in the motion for default judgment or the Plaintiffs' declarations shall be disregarded.

In their Complaint the Plaintiffs seek $155,312.04 (three times the wages owed) plus reasonable attorneys' fees and costs under the MWPCL, $103,541.36 (two times the overtime compensation owed) plus reasonable attorneys' fees and costs under the FLSA, and $51,770.68 under the MWHL plus reasonable attorneys' fees and costs. *See* ECF No. 1 at 6-7.

The undersigned recommends an award of liquidated damages under the FLSA. The Defendants' failure to pay the proper rate for overtime pay started in 2012, more than five years ago. The wages were unlawfully withheld. Awarding liquidated damages appropriately punishes the Defendants for their misconduct and places other employers on notice about the consequences of violating the FLSA. The amount of liquidated damages is different than claimed in the Complaint. Medrano would be entitled to $36,452.00. The amount for Ramirez would be $60,589.36, as alleged in the Complaint, for a total of $97,041.36.

*Attorneys' Fees*

The total amount of attorneys' fees incurred in this case is $3,224.50. *See* ECF No. 13-3 at 3 (Lombardo Decl. ¶ 7). The undersigned has reviewed the Declaration of Mary Craine Lombardo, Esquire and the billing records of her firm. Ms. Lombardo has been practicing law for over sixteen (16) years. She has been the lead attorney of this case since it went to litigation. Her colleague, Jonathan F. Lieberman, Esquire, who likewise has practiced law for over 16 years, was the lead attorney of this case during the investigation and initial demand stage.

The FLSA allows a prevailing Plaintiff to recover reasonable attorney's fees and court costs. 29 U.S.C. § 216(b) ("The court . . . shall . . . allow a reasonable attorney's fee to be paid by the defendant, and costs of the action."). A fee award is appropriate in this case.

After reviewing the billing history and considering the twelve factors derived from *Johnson v Georgia Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974), the undersigned finds (a) the time and labor required, (b) the level of skill required to perform the legal services properly, (c) the customary fee, (d) a contingent fee case, (e) the experience, reputation, and ability of the attorneys, and (f) awards in similar cases weigh heavily in liberally

awarding a reasonable fee. The fees incurred are reasonable. The undersigned therefore recommends an award of $3,224.50 as reasonable attorneys' fees.

*Other Costs*

Plaintiffs seek reimbursement of minimal court costs. They claim $400.00 for the filing fee, $60.00 for the process server's fee, and $1.19 for postal charges, for a total cost award of $461.19. The undersigned finds these fees are reasonable and necessary costs associated with this litigation. The undersigned therefore recommends an award of $461.19 as reasonable costs.

**RECOMMENDATIONS**

The undersigned summarizes the recommendations as follows:

(a) The Court grant Plaintiffs' Motion for Entry of Default Judgment and Award of Attorneys' Fees and Costs (ECF No. 13);

(b) The Court award Plaintiff Griselda Medrano and against the Defendants, jointly and severally, $36,452.00 as compensatory and statutory damages;

(c) The Court award Plaintiff Oscar Ivan Ravelo Ramirez and against the Defendants, jointly and severally, $60,589.36 as compensatory and statutory damages;

(d) The Court award the Plaintiffs $3,224.50 as reasonable attorneys' fees;

(e) The Court award the Plaintiffs $461.19 as reasonable costs;

(f) The Court direct post-judgment interest, calculated in accordance with 28 U.S.C. § 1961, continue to accrue on the judgment until satisfied by the Defendants; and

(g) The Court grant any other and further relief as it deems appropriate.

August 2, 2017 _____/s/_____
WILLIAM CONNELLY
UNITED STATES MAGISTRATE JUDGE